UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| KEVIN REED, | ) | Civil Action No.: 4:09-cv-3126-JFA-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| BOB OLSON, Food Service; MR. McCALL, Warden; MR. KIRSCH, Food Service Branch; MR. CLAYTOR, Acc. Warden; MS. COCCIOLONE, I.G.C.; OFC. D. LINDSAY; OFC. SEWELL; and MR. NAJJAR; | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## I.     INTRODUCTION

Plaintiff is a pro se inmate incarcerated with the South Carolina Department of Corrections at Perry Correctional Institution. He brings this civil rights action pursuant to 42 U.S.C. § 1983. Presently before the Court is Defendant's Motion for Summary Judgment (Document # 81). Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Motion for Summary Judgment could result in the Motion being granted and this case being dismissed. No Response has been filed.[1]

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because the Motion for Summary Judgment is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

---

[1] Accordingly, dismissal is also appropriate pursuant to Rule 41(b), Fed.R.Civ.P.

## II.   FACTUAL ALLEGATIONS

Plaintiff alleges that he has been served cold food, uncooked meat, served food on unsanitary trays, served food with objects in it and that food service workers do not wear gloves, hairnets or head coverings. Plaintiff further asserts that grievances have not been processed. He also asserts that Officer Lindsay turned the water off in his cell for three days in July, 2009 and seven hours in October, 2009. He further complains that Officer Lindsay and Officer Sewell require him to strip, lift his genitals, squat, cough, turn around and bend over when he leaves his cell. He also asserts that Officer Sewell has made inappropriate comments to him.

Plaintiff further asserts that he has been denied all access to the media by Warden McCall, who has confiscated radios, "politically inclined" magazines and newspapers from the SMU. Plaintiff asserts that he has been denied access to the courts by the Defendant Najjar. Plaintiff complains that he has been refused legal supplies, legal copies and law books and copies of policies. Finally, Plaintiff complains that Associate Warden Claytor deprived him of his due process rights by placing him on security detention.

## III.   STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming

-2-

forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

IV.   **DISCUSSION**

  A.   **42 U.S.C. § 1983 Generally**

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807,

127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that the alleged violation was committed by a person acting under the color of state law, and (2) that a right secured by the Constitution or laws of the United States was violated. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

    **B.**     **Conditions of Confinement**

        **1.**     **Relevant Law**

Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. Conditions must rise to the level of a deprivation of a basic human need such as food, warmth, or exercise. Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991). In addition, prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993), the Fourth Circuit stated that an inmate complaining about prison conditions must show that the challenged conditions resulted in a serious deprivation of a basic human need which, in turn, resulted in serious or significant physical or mental harm. While any of these conditions standing alone may not constitute cruel and unusual punishment, they may constitute an Eighth Amendment violation if considered in aggregate. McElveen v. County of Prince William, 725 F.2d 954 (4th Cir. 1984). However, to be considered in aggregate, conditions must have mutually enforcing effects that produce a deprivation of a single,

identifiable need such as food, warmth, or exercise. Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375,1379 (4th Cir. 1993).

"[T]he Constitution does not mandate comfortable prisons, and prisons ... which house persons convicted of serious crimes, cannot be free of discomfort." Rhodes v. Chapman, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminals pay for their offenses against society." Id. at 338.

### 2. Food Service

Plaintiff alleges that Defendant Olson, Food Services Supervisor, constantly serves inmates in SMU cold food, uncooked meats (including raw liver and raw meatloaf) and inadequate amounts of food, that is, less than 1000 calories per day. He also alleges that the food is often contaminated with hair, rocks, various pieces of steal particles, and bugs, both alive and dead. He alleges that inmates have been served pork products without notice, which violates his and other inmates' religious beliefs. He further claims that the trays on which the food is served are often dirty.

Defendant Olson states that Perry Correctional Institution undergoes an annual, unannounced inspection by DHEC. Olson Aff. ¶ 3. Attached to his Affidavit is a copy of the Inspection Report from an inspection made on December 21, 2009 by DHEC. Olson Aff. ¶ 3. The food service operation was given a grade of "A" as a result of that unannounced inspection. Olson Aff. ¶ 3. Also attached to Olsson's Affidavit is an Inspection Report from September 11, 2009. Olson Aff. ¶ 4. That inspection was made by DHEC in response to inmate complaints. Olson Aff. ¶ 4. The Inspection Report of September 11, 2009, indicates a score of 96 points out of a possible 100 and, again, a grade of "A."

Olson Aff. ¶. 4.  Olson further states that he has not received any complaints from the general population and that the food served to inmates in SMU is the same food served to those in the general population.  Olson Aff. ¶ 5.

Olson also describes in his Affidavit that the food trays are regularly placed through a dishwasher.  Olson Aff. ¶ 6.  He further states that despite the efforts to remove rocks or objects from dry beans, there occasionally may be a small object that was contained in the bag from the packaging plant.  Olson Aff. ¶ 7. Finally, Mr. Olson explains that DHEC no longer requires serving gloves, hairnets or hats to be worn by persons handling food.  Olson Aff. ¶ 8.

"It is well-established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." Shrader v. White, 761 F.2d 975 (4th Cir. 1985).  However, a prisoner is entitled only to reasonably adequate food. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." Id. Occasional short-lived problems with food service and isolated instances of spoiled food or foreign objects in the food do not state cognizable claims under the Eighth Amendment. Bedell v. Angelone, No. 2:01CV780, 2003 WL 24054709, *14 (E.D. Va. 2003). (Being served rotten food is unpleasant and unfortunate; however, it simply does not rise to the level of a constitutional violation because Plaintiff has not shown that is resulted in a serious deprivation or that Defendants were deliberately indifferent).

Plaintiff's allegations regarding the food served in SMU fail to rise to the level of cruel and unusual conditions of confinement.  Plaintiff has failed to show that Olson or the other Defendants knew of and disregarded an excessive risk to inmate health or safety.  Further, Plaintiff has failed to

show that the challenged conditions resulted in serious or significant physical or mental harm. Thus, Plaintiff's conditions of confinement claim regarding the food served in SMU is without merit.

### 3.   Water to Plaintiff's Cell

Plaintiff alleges that Defendant Officer Lindsay deprived Plaintiff of proper drinking water on two occasions. He alleges that the water to his cell was turned off on one occasion for three days, from July 9, 2009, to July 11, 2009, and on another occasion for approximately seven hours, from 12:00 pm to 7:15 pm on October 6, 2009. Plaintiff alleges that he was forced to drink water from the toilet on these occasions to keep from dehydrating. He was also unable to properly clean his hands, wash his face or brush his teeth.

Officer Lindsay denies turning the water off to the Plaintiff's cell and states that the only reason that the water would be off would be to perform some type maintenance on the water system. Lindsay Aff. ¶ 6.

Again, Plaintiff has failed to present sufficient evidence to show that Officer Lindsay knew of and disregarded an excessive risk to inmate health or safety. Further, Plaintiff has failed to show that the challenged conditions resulted in serious or significant physical or mental harm. Thus, summary judgment is appropriate on Plaintiff's conditions of confinement claim regarding the water to his cell.

### C.   Access to the Media

Plaintiff alleges that Defendant Warden McCall has cut off all access to the public through the media in that he has confiscated all radios, politically inclined magazines, and newspapers. He claims that this deprivation has made Plaintiff and other inmates ignorant to world politics, law and progress.

Defendant Warden McCall states in his Affidavit that a security issue arose in the SMU unit at Perry Correctional Institution in 2009. McCall Aff. ¶ 2. Inmates were using batteries and radios

to construct handcuff keys. McCall Aff. ¶ 2. As a result of this security concern, he restricted the possession of radios and batteries for SMU inmates. McCall Aff. ¶ 2. He avers that another security issue arose in SMU where inmates were using newspapers and magazines to cover the openings of their cells and cell lights. McCall Aff. ¶ 3. As a result of this activity, he restricted magazines and newspapers from SMU. McCall Aff. ¶ 3. He states that he set up a newsletter to be prepared and issued through the Chaplain's office so that inmates in SMU could keep up with current events. McCall Aff. ¶ 3.

Inmates clearly retain their First Amendment right of free speech in prison, which includes the right to access publications. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). However, in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. Id. at 89. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. Id.

In Turner, the Court identified four factors to consider: (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. Id. at 89-90. When applying these factors, the court must "respect the determinations of prison officials." United States v. Stotts, 925 F.2d 83, 86 (4th Cir.1991). The plaintiff bears the ultimate burden of establishing that a prison regulation is unconstitutional. Hause

v. Vaught, 993 F.2d 1079, 1082 (4th Cir.1993).

As to the first factor, Defendants have presented evidence that the restrictions placed on the receipt of radios, magazines and newspapers were put in place as a result of security issues in SMU. The Fourth Circuit emphasizes that great deference must be given to prison administrators with regard to security matters:

> In the difficult and dangerous business of running a prison, frontline officials are best positioned to foresee threats to order and to fashion responses to those threats. Hence, the evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination. When a state correctional institution is involved, the deference of a federal court is even more appropriate. Prison officials should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir.1999). In the present case, the restrictions at issue are rationally related to a legitimate and neutral governmental objective, that is, maintaining order and safety in SMU. Plaintiff has failed to present sufficient evidence to challenge this showing made by Defendants.

The court must next consider whether there are alternative avenues that remain open to the inmates to exercise their First Amendment right to access media. Warden McCall avers that a newsletter is prepared and issued through the Chaplain's office so that inmates in SMU can keep up with current events. Plaintiff has not shown otherwise.

The third factor in Turner is "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally." Turner, 482 U.S. at 90. Defendants do not specifically address this factor. However, as stated above, the asserted constitutional right is accommodated by the issuance of a newsletter through the Chaplain's office.

Finally, the court must determine whether there is a ready alternative that would fully accommodate the inmate's rights. The issue is whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal. Overton v. Bazzetta, 539 U.S. 126, 136, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003). Again, an accommodation, the newsletter from the Chaplain's office, has been provided and Plaintiff has not challenged this accommodation as inadequate. Accordingly, because Defendant has shown the restrictions on newspapers and magazines are rationally related to a legitimate and neutral governmental objective and that they have provided an alternative means for allowing inmates in SMU to exercise their rights, Plaintiff's claim is without merit and summary judgment is appropriate.

**D.    Access to Courts**

Plaintiff also alleges that Defendant Najjar has denied inmates in SMU the access to courts in that he has refused to provide legal supplies to inmates who request them or to make adequate legal copies and has confiscated the legal copies of inmates. He further alleges that Najjar refuses to bring law books and policies to inmates and that Najjar has confiscated and/or lost Plaintiff's legal documents.

Najjar submits an Affidavit in which he denies the allegations raised by Plaintiff. Najjar Aff. ¶ 5. He further avers that he has provided paper, pencils, and envelopes to inmates in SMU and all inmates have access to the law library. Najjar Aff. ¶ 5. Further, any inmate who can show a pending deadline receives additional time in the law library. Najjar Aff. ¶ 5.

The critical issue that must be analyzed to resolve the claims in this case is whether or not the plaintiff has been denied meaningful access to courts and is able to show actual injury as a result of

the denial alleged. Prisoners do not have a cause of action under § 1983 for negligent interference by prison officials with their right of access to the courts. Pink v. Lester, 52 F.3d 73 (4th Cir.1995) ("negligent denial of access to the courts is not actionable under § 1983.") A prisoner must allege adverse consequence as a basis for allegations that the defendant's actions deprived him of meaningful access to the courts. White v. White, 886 F.2d 721 (4th Cir.1989); Morgan v. Montanye, 516 F.2d 1367 (2d Cir.1975) cert. denied, 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976). Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

Plaintiff has not alleged or presented evidence to show that he suffered any injury as a result of the alleged denial of access to courts. He has not shown that the alleged actions of Najjar hindered or are hindering his efforts to pursue a legal claim. Therefore, summary judgment is appropriate on this claim as well.

### E.     Strip Searches

Plaintiff alleges that Officers Sewell and Lindsay have sexually harassed him by making him "take off all articles of clothing, lift genitals, squat, cough, turn around, bend over, spread buttocks, and while still in this position back up to the door so that they may thoroughly inspect Plaintiff's anal cavity any and every time Plaintiff exits his cell." Amended Complaint p. 8. Plaintiff also alleges that he was inappropriately touched by Officer Sewell on August 31, 2009, while being placed in handcuffs. He alleges that he has suffered psychological and physical distress as a result of these officers' actions.

Officer Lindsay submits an Affidavit in which he states that inmates in the SMU unit are

required to submit to a body cavity search any time an inmate leaves his cell for security purposes. Lindsay Aff. ¶ 2. He avers that he does no more than is required of him according to SCDC policy and instructions from his superiors. Lindsay Aff. ¶ 2. He avers that he does not degrade, insult or call inmates names and he has not harassed or discriminated against Plaintiff. Lindsay Aff. ¶ 2.

Officer Sewell also submits an Affidavit stating that part of his duties is to perform strip searches on inmates in SMU, which requires inmates to bend at the waist, spread their cheeks and cough. Sewell Aff. ¶ 2. The purpose of this procedure is to search for weapons and contraband. Sewell Aff. ¶ 2. The inmates' cells and clothing are also searched for weapons and contraband. Sewell Aff. ¶ 2. He avers that the searches are done for the safety of officers and inmates. Sewell Aff. ¶ 2. He avers that he does not degrade inmates, make sexual remarks or use racial slurs in performing his duties. Sewell Aff. ¶ 2.

The requirement that maximum security inmates such as Plaintiff undergo regular strip searches fails to raise a constitutional claim. Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (finding that body cavity searches are reasonable under the Fourth Amendment because in prisons the "(s)muggling of money, drugs, weapons, and other contraband is all too common an occurrence"); see also Forbes v. Trigg, 976 F.2d 308 (7th Cir.1992) (collecting cases), cert. denied, 507 U.S. 950, 113 S.Ct. 1362, 122 L.Ed.2d 741 (1993); Spence v. Farrier, 807 F.2d 753, 755 (8th Cir.1986); Peckham v. Wisconsin Dep't of Corrections, 141 F.3d 694 (7th Cir.1998) (strip searches constitutional absent evidence they were performed for purposes of harassment or punishment); Thompson v. Sauza, 111 F.3d 694, 699 (9th Cir.1997); Franklin v. Lockhart, 883 F.2d 654 (9th Cir.1989) (approving twice-a-day visual body cavity searches for inmates in disciplinary and administrative segregation); Michenfelder v. Sumner, 860 F.2d 328, 332-333 (9th Cir.1988) (strip

searches when entering and leaving cells not excessive even if prisoner escorted from one portion of a unit to the next); Amaechi v. West, 237 F.3d 356, 361 (4th Cir.2001).

As previously discussed, Warden McCall avers that several security concerns have arisen in SMU. Plaintiff has failed to present sufficient evidence to show that the strip searches are performed for any reason other than security or safety concerns. Thus, Plaintiff has failed to show a constitutional violation and summary judgment is appropriate.

### F.    Grievance Procedure

Plaintiff alleges that Defendant Miriam Coccoloine (now Miriam Snyder), the Inmate Grievance Coordinator, has failed to properly process and investigate grievances in that she fails to meet the "statute of limitations" when processing grievances or denies or "unprocess" all grievances of merit or involving criminal activities by her coworkers. He alleges that he has filed thirty-five grievances of various complaints and twenty have been denied or unprocessed and he has not heard anything on the other fifteen.

Snyder submits an Affidavit in which she avers that she processes the complaints and grievances according to SCDC policy and if a grievance is not properly prepared or signed, it is returned to the inmate. Snyder Aff. ¶ 4. She further avers that she has never deliberately failed to process a grievance or attempted to delay a grievance. Snyder Aff. ¶ 4.

The law is well-settled that there is no constitutional right to a grievance procedure. Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1944) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process

because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983); Doans v. Rice, 831 F.2d 1057 (4th Cir.1987). Thus, even if defendants failed to timely respond to, or process the plaintiff's grievances, the plaintiff has not stated a constitutional claim. Accordingly, summary judgment is appropriate.

### G.  Classification

Plaintiff alleges that Associate Warden Claytor deprived him of his due process rights by placing him on security detention on April 22, 2009, without going through the proper procedures to do so. He alleges that he is being held in SMU illegally. He further alleges that he and his roommate were charged with the same violation, 811-possession of a weapon, and placed in SMU on the same date, but his roommate was released and, as of the date of his Complaint, Plaintiff had not been released.

Plaintiff appears to be challenging his placement in SMU. Plaintiff does not have a constitutional right to be held in a certain classification, Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994), nor does he have a liberty interest in his level of classification. Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Thus, Plaintiff has failed to state a claim regarding his classification and summary judgment is proper.

### H.  Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether the defendant is protected

by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir.2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir.1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, assuming arguendo that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In Maciariello v. Sumner, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to

-15-

> the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of these Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the Court were to find that Plaintiff has established some theory of liability upon the part of these Defendants, and therefore, the existence of a constitutional deprivation, these Defendants are still entitled to qualified immunity. The record before the Court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties and did not transgress any bright lines of statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

## V.    CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (Document # 81) be granted and this case be dismissed in its entirety. If the district judge accepts this recommendation, all pending motions will be moot.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 19, 2011
Florence, South Carolina

**The parties are directed to the important notice on the following page.**